UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

———————————————————————

RAJZHAUN ROUSE,

                          Petitioner,

        v.                                                      9:24-CV-0760
                                                                (MAD)
SUPERINTENDENT, Auburn Correctional Facility,

                          Respondent.

———————————————————————

APPEARANCES:                                        OF COUNSEL:

RAJZHAUN ROUSE
Petitioner Pro Se
22-B-2006
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

HON. LETITIA JAMES                          MICHELLE ELAINE MAEROV, ESQ.
Attorney for Respondent                     Ass't Attorney General
New York State Attorney General
The Capitol
Albany, New York 12224


MAE A. D'AGOSTINO
United States District Judge

**MEMORANDUM-DECISION and ORDER**

## I.      INTRODUCTION

        Petitioner Rajzhaun Rouse seeks federal habeas relief pursuant to 28 U.S.C. § 2254.

Dkt. No. 1, Petition ("Pet.").  Respondent opposed the Petition and filed pertinent records

1

from the state court proceedings.  Dkt. No. 14, Response; Dkt. No. 14-1, Memorandum of Law in Opposition ("Resp. MOL"); Dkt. Nos. 14-3 and 14-4, State Court Records ("SR"); Dkt. No. 14-6, State Court Transcript ("T").[1]  Petitioner has not filed a reply.  For the reasons which follow, the Petition is denied and dismissed.

## II.    RELEVANT BACKGROUND

### A.    State Court Criminal Proceedings

#### 1. The Shooting Incident and Charges Against Petitioner

On the morning of August 29, 2020, a vehicle attempted to exit Coyne's Tavern in Syracuse, New York, when the driver struck a bystander.  SR 356, 414-415, 493-94.  Thereafter, gunshots were fired at the vehicle.  *Id*.  Security cameras outside of the tavern recorded the incident.  *Id*.

On September 17, 2020, Syracuse Police Detective Demetris Christou released an attempt to identify bulletin with regard to the shooting incident from August 29, 2020, which contained images of Petitioner and his co-defendant Gabriel Martinez, and designated them as suspects.  SR 51-52, 422, 459-460, 481; T. at 3-7, 31, 34, 46, 59.  Thereafter, four police officers acquainted with Petitioner reviewed the attempt to identify bulletin and identified Petitioner as one of the suspects.  SR 51-52, 349, 385, 407, 422-423, 443.

On October 22, 2020, Petitioner was arrested on a felony complaint that accused him

---

[1]  For the sake of clarity, with one exception, citations to all parties' filings refer to the pagination generated by CM/ECF, the Court's electronic filing system, including citations to the State Court Transcript ("T."). However, citations to the State Court Record ("SR"), Dkt. Nos. 14-3 and 14-4, reference the Bates-stamp at the bottom-right of each page, as each exhibit is separately and consecutively paginated.

of firing a gun at an occupied vehicle on the morning of August 29, 2020, and charged him with first-degree reckless endangerment and second-degree criminal possession of a weapon.  SR 50, 340, 342-43, 353, 356-57, 388-89, 398, 400, 411, 414-15.  Immediately before Petitioner's arrest, he waived his *Miranda* rights,[2] and he thereafter spoke with a law enforcement official, during which time he identified himself on surveillance images taken from outside of Coyne's Tavern on the morning of August 29, 2020, but denied being involved in the shooting.  SR 53, 347, 435.

On November 19, 2020, an Onondaga County Grand Jury issued an indictment charging Petitioner and co-defendant Gabriel Martinez with acting in concert to commit attempted second-degree murder, and separately charging both individuals with second-degree criminal possession of a weapon and first-degree reckless endangerment.  SR 36-37.

### 2. Pre-trial Proceedings

#### a. Counsel's Motions

On December 1, 2020, Petitioner's counsel moved to dismiss the indictment on the grounds that at the time Petitioner was advised on his right to testify before the grand jury, the People failed to inform him that the grand jury would consider an attempted murder charge in addition to the gun and reckless endangerment charges presented in the felony complaint.  SR 54-57.  Thereafter, Petitioner's counsel separately filed an omnibus motion wherein counsel sought to (1) dismiss the indictment for legal insufficiency and other defects,

---

[2]  *See Miranda v. Arizona*, 384 U.S. 436 (1966).

3

(2) suppress statements made by Petitioner to police, and (3) preclude the introduction of evidence related to Petitioner's prior bad acts.  SR 462-72.

### b.  Petitioner's Request to Replace Counsel

On or about February 21, 2021, Petitioner sent a handwritten letter to the trial court requesting to replace his attorney, Donald Kelly, on the grounds that counsel had not communicated with him since January 26, 2021, which was Petitioner's last court date, or "supported" Petitioner with "paperwork" or "discovery[.]"  SR 474.  Petitioner also faulted counsel for failing to obtain a reduction in his bail.  *Id*.

### c.  Suppression Hearing

On April 23, 2021, the trial court conducted a hearing on Petitioner's motion to suppress identification evidence and statements made by Petitioner to police.  SR 35, 470-71; T at 2.  Donald Kelly represented Petitioner at the hearing.  SR 35, T. at 2.

During the hearing, the People introduced testimony from Syracuse Police Detective Christou, who indicated that on September 17, 2020, he circulated an "attempt to identify" bulletin that included images of the suspected shooters.  T. at 3-7, 31, 34, 46, 59.

Police Officer McKenzie Spiddle testified that she reviewed the bulletin and recognized Petitioner and his co-defendant Martinez as the suspects because they were friends of her child's father, and she had seen Petitioner's photo on her son's father's social media feed.  T. 29-32.

Police Officer Thomas Blake testified that he reviewed the bulletin and was able to identify Martinez because Blake had previously arrested Martinez and regularly monitored

4

Martinez's Facebook page.  T. at 55-57.  Blake further testified that Martinez posted pictures on his Facebook page with Petitioner, which is how Blake was able to identify Petitioner as the other individual in the bulletin.  T. at 55-60.

Police Officers Reed Bebernitz and Cody Nellis testified that they each reviewed the bulletin and recognized Petitioner as someone they had witnessed in the past hanging out at a store on the north side of the city.  T. at 33-35, 46-48.  Bebernitz further testified that he and Nellis pulled Petitioner over on a traffic stop roughly three weeks after reviewing the bulletin, and it was at this time that Bebernitz viewed Petitioner's license and made a note of his name before letting him go.  T. at 35.  Bebernitz and Nellis also testified that they saw Petitioner standing at a street intersection on October 22, 2020, at which time they approached him and placed him under arrest.  T. at 35-39, 43-44, 48-50.

### d.  The Trial Court's Decision on the Motions to Suppress

On July 7, 2021, the trial court issued a written decision denying the motions to suppress.  SR 43-48.  The trial court ruled that Petitioner's statements to police were voluntary, that the police had probable cause to take him into custody, that the circulation of the bulletin containing pictures of the suspects was not improper, and that Officer Spiddle's identifications of Petitioner and Martinez were merely confirmatory.  *Id*.

### e.  Petitioner's Guilty Plea

On February 24, 2022, Petitioner and his two attorneys, Mr. Kelly and Joseph Wentland, appeared before the Honorable Thomas Miller in Onondaga County Court.  T. at 65.  During an off-the-record bench conference, counsel told Judge Miller that Petitioner

wished to change attorneys, which Judge Miller acknowledged to Petitioner on the record.  *Id*. at 66.  Judge Miller also told Petitioner that he was free to hire new counsel, but his trial was scheduled to begin on March 28, 2022, and that date would not be extended based on a change of counsel.  *Id*. at 66-67.

Judge Miller then discussed the Petitioner's maximum sentence exposure, told Petitioner that his co-defendant had already pleaded guilty and was allowed to remain at liberty pending sentence, and stated that if Petitioner pleaded guilty, he would receive the same pre-sentencing release status.  T. at 67.  Thereafter, Judge Miller advised Petitioner that during the off-the-record bench conference, the parties discussed a possible plea disposition and directed the prosecutor to place the People's plea offer on the record.  *Id*.

The prosecutor then conveyed an offer to Petitioner that if he pleaded guilty to second-degree criminal possession of a weapon, he would receive a ten-year prison term.  T. at 68. The prosecutor noted that Martinez had pleaded guilty to that charge and was promised an eight-year sentence, which was two years less than the offer to Petitioner because the video recording of the shooting showed Petitioner firing eight to ten shots at the vehicle, whereas Martinez fired "maybe around three shots."  *Id*.  The prosecutor further indicated that the offer "expires today."  *Id*.

After the prosecutor concluded, Judge Miller asked Petitioner to speak with his attorney about the offer.  T. at 68-69.  Thereafter, Petitioner's case was recalled and Petitioner agreed to accept the offer.  *Id*. at 69-72.  Judge Miller told Petitioner that he could remain at liberty pending his sentence, and explained the consequences of any subsequent

6

arrest, failure to return to court, or failure to cooperate with the officials preparing his presentencing report. *Id*. at 70-72. Petitioner stated that he understood the terms and answered questions from the court related to his plea. *Id*.

Petitioner first stated that he had discussed the plea with his attorneys, that he was satisfied with their services, and that he did not have further questions. T. at 72.

Petitioner then acknowledged his understanding that by pleading guilty, he was waiving his rights to a bench trial or a jury trial, that a jury trial would have required a unanimous verdict, and that the prosecution during a jury or bench trial would have been required to present evidence and he would have been entitled to cross-examine their witnesses, present a defense, and testify on his own behalf. T. at 72-74. Petitioner also expressed his understanding that his conviction after a guilty plea was the same as a conviction after trial. *Id*. at 74.

Petitioner denied being under the influence of alcohol or drugs or having a physical or mental impairment, denied having questions for the court, and stated that he was pleading guilty freely because he was in fact guilty. T. at 74-75. Petitioner also denied that anyone had coerced his guilty plea and agreed to waive his right to appeal. *Id*. at 75.

Thereafter, the trial court directed Petitioner's attention to the weapons count of the indictment and asked him whether, on August 29, 2020, in Onondaga County, he possessed a loaded firearm at a place other than his home or place of business. T. at 77. Petitioner admitted that he had done so and pleaded guilty to second-degree criminal possession of a weapon, in violation of Penal Law § 265.03(3). *Id*. at 77-78. The court accepted Petitioner's

7

guilty plea, deeming it "knowing, intelligent, and voluntary," and adjourned the case for sentencing. *Id*.

### f. Sentencing

On April 28, 2022, Petitioner and his attorneys appeared for sentencing. T. at 81-85. The trial court reiterated the agreed upon sentence and noted that Petitioner had pleaded guilty and waived appeal. *Id*. at 84. Petitioner asked to adjourn sentence, but the court denied the request. *Id*. at 85.

The court then asked Petitioner if he wished to say anything before the sentence was imposed, to which Petitioner responded, "No, sir." T. at 85. The court then sentenced Petitioner to a ten-year prison term, to be followed by five years of post-release supervision. *Id*. at 85-86.

### B.     Direct Appeal

On appeal to the Appellate Division, Fourth Department, Petitioner's appellate counsel appealed Petitioner's conviction on the grounds that his sentence was excessive because Petitioner had no prior criminal history, there were issues with the evidence against him, and Petitioner's punishment should not have been tied to the number of shots fired. SR 1-24. The People filed a brief in opposition. SR 487-501.

On March 15, 2024, the Appellate Division unanimously affirmed Petitioner's conviction. SR 515-16.

The appellate court held that Petitioner's negotiated sentence was not excessive, even though it exceeded the sentence imposed on a codefendant who had a more extensive

criminal history, because Petitioner "fired at least twice as many shots as [his] codefendant did, perhaps as many as eight or nine in total[,]" and "[t]he shots were fired in a crowded parking lot while the victims were driving away from the scene of a relatively minor physical altercation that did not involve [Petitioner]." SR 515-16. The court further observed that Petitioner failed to cooperate with police and, even after pleading guilty, denied his guilt when interviewed by the probation department for his presentence report. SR. 516.

Petitioner sought leave to appeal from the New York State Court of Appeals, which was denied on April 30, 2024. SR 521-23, 531.

## III.    THE PETITION AND RESPONSE

Petitioner contends that he is entitled to federal habeas corpus relief because (1) his sentence was harsh and excessive; (2) the identification of him as a suspect was "not supported by evidence"; (3) his trial counsel was ineffective; and (4) the trial court improperly denied his request to "dismiss" his trial attorney. Pet. at 2-3, 5, 7-8.

Respondent argues that the Petition should be denied and no certificate of appealability issued because (1) Petitioner's excessive sentence claim is not cognizable, (2) Petitioner waived his right to challenge his trial counsel's effectiveness and the trial court's denial of his request to change counsel when he pleaded guilty, and (3) other than Petitioner's excessive sentencing claim, his claims are unexhausted and, in any event, meritless. *See generally*, Resp. MOL.

9

## IV.   DISCUSSION

### A.   Exhaustion Requirement

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that an application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(A), (B)(i), (ii).  "The exhaustion requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings[.]'"  *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively.  Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition.  Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted); *Fama v. Comm'r. of Corr. Servs.*, 235 F.3d 804, 808 (2d Cir. 2000).  In other words, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The petitioner must have used the proper procedural vehicle so that the state court may pass on the merits of his or her claims.  *Dean*

10

*v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985); *Barton v. Fillion*, No. 9:03-CV-1377 (DNH/GJD), 2007 WL 3008167, at \*5 (N.D.N.Y. Oct. 10, 2007).  "[W]hen a 'petitioner fail[s] to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted."  *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

**B.      Standard of Review Governing Exhausted Claims**

Under the AEDPA, a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. §§ 2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180-81, 185 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no

possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508-509 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, the AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, 567 U.S. 37, 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). A state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015).

### C.      Ground One: Excessive Sentence Claim

Petitioner contends that his sentence was excessive because he had no prior criminal history and the sentencing guideline range for Second Degree Criminal Possession of a Weapon for a first time offender "is 3 ½ to 7 years."  Pet. at 5.

Petitioner pled guilty to Second Degree Criminal Possession of a Weapon (Penal Law § 265.03(3)), a class "C" violent felony offense, for which he could have been sentenced to a prison term of up to fifteen years.  *See* Penal Law §§ 60.05(4), 70.02(3)(b).  Petitioner's ten-year prison term falls below the maximum term.  Thus, Petitioner's excessive sentence claim is not cognizable on habeas review.  *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("no federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."); *Mayerhofer v. Bennett*, No. 9:02-CV-0074 (LEK/VEB), 2007 WL 1624767, at *7 (N.D.N.Y. June 6, 2007) (same); *Taylor v. Connelly*, 18 F. Supp. 3d 242, 268 (E.D.N.Y. 2014) ("An excessive sentence claim may not provide grounds for habeas corpus relief where a petitioner's sentence is within the range prescribed by state law.").

### D.      Ground Two: Insufficient Identification

Petitioner contends that the identification of him as a suspect was "not supported by evidence."  Pet. at 7.  More specifically, Petitioner asserts that the identification of him as a suspect was flawed because he was never pointed out in a line-up, he was not "seen on" the surveillance video, he was dressed identically to five other people at the tavern on the night of the shooting incident, and his hair was styled differently from the shooter depicted on the surveillance video.  *Id*.

13

As an initial matter, Petitioner's appellate brief does not challenge the adequacy of his conviction on the grounds that the trial court erred in denying his request to suppress identification evidence.  *See* SR 1-24.  Rather, the appellate brief discusses deficiencies with Petitioner's identification as the primary shooting suspect only to support the underlying argument that his sentence was excessive under the circumstances.  SR 2, 17-23.  Furthermore, Petitioner's leave application submitted to the New York Court of Appeals expressly states that the application is based solely on "whether the imposition of a 10-year sentence was unduly harsh and severe."  SR 521-523.  In other words, Petitioner's current contention that his identification as a suspect was not supported by the evidence is unexhausted.  *See Jordan v. LeFevre*, 206 F.3d 196, 198 (2d Cir. 2000) ("Arguing a single claim at length and making only passing reference to possible other claims to be found in the attached appellate briefs" by requesting leave "[f]or all of these reasons and the reasons set forth in his Appellate Division briefs" does not "fairly apprise the state court of those remaining claims."); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (if a petitioner's leave application specifically requested review of only one claim, all other claims would be deemed procedurally defaulted, even though the petitioner included his appellate brief in which the other claims were raised); *Cornell v. Kirkpatrick*, 665 F.3d 369, 375 (2d Cir. 2011) (petitioner mentioning the issue of "ineffective assistance of counsel" in his direct appeal is insufficient to alert the state courts of federal claim); *Baldwin v. Reese*, 541 U.S. 27, 32-34 (2004) (finding that ineffective assistance claim is considered unexhausted when petitioner mentions "ineffective assistance of counsel" on appeal without referring to a specific federal law claim).

14

Generally speaking, a technically unexhausted claim can be deemed exhausted, but procedurally defaulted because the petitioner failed to fairly present it to the state courts for consideration. *Aparicio v. Artuz*, 269 F.3d 78, 90-91 (2d Cir. 2001) ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(I) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile."); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). Here, it appears that Petitioner's contention that there was not sufficient evidence in the record to support his identification as one of the shooting suspects (such that his motion to suppress should have been granted) is based solely on the state court record. Moreover, Petitioner already had one full round of direct appeal in which to raise this claim. Thus, he cannot now challenge the trial court's denial of his request to suppress identification evidence in a post-judgment motion. *See* CPL § 440.10(2)(c); *see also Clark v. Perez*, 510 F.3d 382, 390-93 (2d Cir. 2008); *cf. McCallie v. Poole*, No. 07-CV-0473, 2011 WL 1672063, at *9 (W.D.N.Y. May 3, 2011) (finding record-based ineffective assistance claim to be unexhausted and procedurally defaulted); *Harrison v. Thompson*, No. 9:20-CV-705 (MAD/ATB), 2021 WL 1601281, at *8 (N.D.N.Y. Feb. 25, 2021) ("Petitioner failed to raise any speedy trial violations of a federal nature to the Third Department. Because petitioner has already perfected the state court appeal to which he is entitled, and he cannot properly present this claim in a §

15

440.10 motion because it is record based and could have been raised on direct appeal, he has failed to exhaust the claim."), *report and recommendation adopted by* 2021 WL 1599121 (N.D.N.Y. Apr. 23, 2021); *Aparicio*, 269 F.3d at 91 ("Petitioner was entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals, both of which he pursued long ago."). Accordingly, Petitioner's claim that the trial court erred in denying his request to suppress identification evidence is procedurally defaulted.

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he is actually innocent. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see also Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) ("Actual innocence means factual innocence, not mere legal insufficiency." (citation omitted)). To establish cause, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Coleman*, 501 U.S. at 753; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (concluding that petitioner did not satisfy the cause and prejudice showing where he did not give any reason for failing to properly exhaust his federal claim in state court). If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-

16

prejudice standard"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).  In order to demonstrate prejudice, a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *see also Gutierrez v. Smith*, 702 F.3d 103, 112 (2d Cir. 2012) (holding petitioner demonstrated prejudice and allowing his procedurally defaulted claim to proceed because "[t]he difference between a conviction for murder in the second degree and one for manslaughter is substantial, the former carrying a significantly higher potential term of imprisonment[, and] [t]hus, the submission of a depraved indifference murder charge to the jury, if the charge was in error, worked to Petitioner's 'actual and substantial disadvantage'").

Petitioner has not identified any cause for the default.  In fact, Petitioner does not even acknowledge the default.  In addition, Petitioner does not claim that the denial of habeas relief would result in a fundamental miscarriage of justice, and his admission of guilt "indicates that no fundamental miscarriage of justice will occur if the procedural bar is applied."  *Gomez v. Miller*, No. 9:19-CV-1571 (TJM), 2021 WL 5446979, at *7 (N.D.N.Y. Nov. 22, 2021) (collecting cases).  Accordingly, Petitioner's claim regarding identification evidence is procedurally barred.

Furthermore, even assuming this claim is based on facts outside the state court record, it is plainly meritless.  Petitioner placed himself at the tavern on the night of the shooting incident at issue.  SR 53, 347, 435.  Detective Christou testified that he reviewed

17

video surveillance footage of the shooting incident, that he was able to identify two shooters from that footage, that he reviewed surveillance footage from inside the tavern on the same evening, and that he was able to track the two shooters as having been inside the tavern.  T. at 4-5.  Detective Christou further testified that he captured still photos from the surveillance video and submitted those images to "OCAC, our computer people[,]" who in turn created an attempt to identify bulletin using those images.  *Id*. at 6-7.  The bulletin was then circulated via email to the entire police department.  *Id*. at 7.  In addition, four different law enforcement officials offered testimony during Petitioner's suppression hearing explaining how they were able to identify him as one of the suspects in the bulletin, including one officer who made her identification based on prior familiarity with Petitioner.  T. at 29-39, 43-50, 55-60; SR 48.

Simply put, nothing in the record supports a finding that the procedures utilized to identify Petitioner as a shooting suspect were unduly suggestive or unreliable such that the trial court's denial of the motion to suppress could be considered unreasonable.  Thus, Petitioner's insufficient evidence claim is also plainly meritless.

### C.    Grounds Three and Four

Petitioner contends that (1) trial counsel was ineffective for failing to communicate with him, and (2) the trial court erred in denying his request to "dismiss" counsel.  Pet. at 8.

As an initial matter, neither one of these claims has anything to do with the voluntariness of Petitioner's guilty plea, which occurred after trial counsel allegedly failed to communicate with Petitioner and after the trial court denied his request to "dismiss" his attorney.  Moreover, it is "well settled that a guilty plea represents a break in the chain of

events which has preceded it in the criminal process and [a petitioner] may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Williams v. Gonyea*, No. 9:16-CV-0460 (JKS), 2017 WL 4990645, at \*5 (N.D.N.Y. Oct. 31, 2017) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).[3]  Thus, Petitioner's claims related to the ineffectiveness of his trial counsel and the trial court's refusal to assign him new counsel are barred under *Tollett*.  *See Coward v. Bradt*, No. 9:11-CV-1362 (LEK/CFH), 2013 WL 6195751, at \*15 (N.D.N.Y. Nov. 27, 2013) ("Coward's grounds for the ineffective claim, that counsel had a conflict of interest and also failed to move to dismiss the indictment, do not relate to the voluntariness of Coward's plea and are barred by *Tollett*." (citing *Canal v. Donelli*, No. 06-CV-1490, 2008 WL 4287385, at \*3 (N.D.N.Y. 2008)).

Furthermore, these claims are unexhausted and, while perhaps based on matters outside of the state court record, plainly meritless.[4]

---

[3] Petitioner does not contend that his guilty plea was involuntary.

[4] Under New York law, when a claim of ineffective assistance of counsel is based upon facts that occurred outside the trial record, the claim must be made on collateral attack via a CPL § 440.10 motion, and not upon direct appeal.  *Hansen v. Johnson*, No. 21-CV-00409, 2023 WL 4274273, at \*6 (E.D.N.Y. June 29, 2023) (citing, *inter alia*, *Pierotti v. Walsh*, 834 F.3d 171, 178 (2d Cir. 2016)).  Because there is nothing in the record to suggest that Petitioner has filed a Section 440.10 motion and there is no time limit or number cap on said requests for relief, it is possible that his unexhausted ineffective assistance claim could still be brought in a § 440.10 motion.  *See e.g., Mosley v. Rich*, No. 9:18-CV-0428, 2020 WL 3128530, at \*12 (N.D.N.Y. June 12, 2020) (explaining if a Petitioner's unexhausted claims "are based on evidence outside  the record, however, they could still be brought in a motion to vacate judgment under CPL § 440.10 because there is no time limit or number cap on § 440.10 motions").  However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  This is particularly true where the claim is plainly meritless.  *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).

### 1.  Ineffective Assistance Claim

#### a.  Legal Standard

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, "a reasonable probability" exists that the result of the proceedings would have been different such that the petitioner suffered prejudice.  *Premo*, 562 U.S. at 121-22 (noting that petitioner "must show both deficient performance by counsel and prejudice") (citation and internal quotation marks omitted); *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  The standard "must be applied with scrupulous care" in habeas proceedings because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial] proceedings[.]"  *Premo*, 562 U.S. at 122.  "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney."  *Richter*, 562 U.S. at 110 (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted).  To establish a deficient performance by counsel, a petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

### b. Analysis

Petitioner contends that trial counsel was ineffective for failing to communicate with him before he pleaded guilty.  Pet. at 8.

As an initial matter, a "failure to communicate, by itself, does not render the attorney's performance deficient."  *United States v. Amirouche*, No. 1:24-CV-2596, 2024 WL 4181842, at *11 (E.D.N.Y. Sept. 13, 2024).

Moreover, as part of Petitioner's guilty plea, he stated, on the record, that he was satisfied with his trial counsel's services.  *See* T. at 67-72.  Such a representation clearly undercuts Petitioner's current post-sentencing contention.  *See Dickson-Eason v. Smith*, No. 9:19-CV-00455, 2020 WL 3893005 (N.D.N.Y. July 10, 2020) ("Solemn declarations in open court carry a strong presumption of verity, and '[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.'" (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977))).

In addition, the plea bargain secured by Petitioner's trial counsel was favorable, as it included a prison term that was five years less than the maximum prison term Petitioner faced if he was found guilty of the crime to which he pled guilty, and fifteen years below the maximum prison sentence Petitioner could have received if he was found guilty of the top count in the indictment.  *See Whitehurst v. Senkowski*, 485 F. Supp. 2d 105, 120 (N.D.N.Y. 2007) (finding that the fact that a defendant had received a favorable plea bargain "militate[d] against a finding that his attorney rendered ineffective assistance"); *Seifert v.*

21

*Keane*, 74 F. Supp. 2d 199, 206 (E.D.N.Y. 1999) ("Given the favorable nature of petitioner's plea, the court cannot say that counsel's performance was deficient[.]"), *aff'd*, 205 F.3d 1324 (2d Cir. 2000).

Prior to negotiating this plea agreement, trial counsel also filed a motion to dismiss the indictment, filed an omnibus motion seeking dismissal of the indictment, suppression of statements, and preclusion of evidence related to prior bad acts, and represented Petitioner effectively during the suppression hearing, where trial counsel questioned multiple witnesses extensively.  SR 36-37, 54-57, 462-72; T. at 1-63.

Indeed, aside from the vague and self-serving statements in the Petition, there is nothing in the record to suggest that trial counsel's performance was constitutionally deficient. Furthermore, Petitioner has failed to provide any credible explanation for why he believes he likely would have been acquitted at trial on all charges in the indictment, or received a more favorable sentence, had he not pled guilty when he did.  *See Belle v. Superintendent*, No. 9:11-CV-0657 (NAM), 2013 WL 992663, at *12 (N.D.N.Y. Mar. 13, 2013) ("In the context of a guilty plea , [in order to establish prejudice,] the [petitioner] must show a reasonable possibility that but for counsel's errors the outcome would have been different—i.e., the accused would not have pled guilty and would likely have been acquitted at trial, or would have received a significantly more favorable sentence." (citing *Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985))).

Simply put, even if the *Tollett* bar did not foreclose Petitioner's ineffective assistance claim, which it does, the claim is also plainly meritless.

22

### 2. Trial Court's Denial of Petitioner's Request for New Counsel

#### a. Legal Standard

"An indigent criminal defendant has the right to counsel but does not have the right to counsel of his choice." *See Crampton v. Lilley*, No. 9:23-CV-0226 (AJB/ML), 2026 WL 528921, at *8 (N.D.N.Y. Feb. 5, 2026) (citing *Pizarro v. Bartlett*, 776 F. Supp. 815, 819 (S.D.N.Y. 1991)), *report and recommendation adopted by* 2026 WL 527016 (N.D.N.Y. Feb. 25, 2026).  The focus of the Sixth Amendment's protection is "the adversarial process, not . . . the accused's relationship with his lawyer." *United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984).

When a criminal defendant "voices a seemingly substantial complaint about [assigned] counsel, the court should inquire into the reasons for dissatisfaction." *McKee v. Harris*, 649 F.2d 927, 933 (2d Cir. 1981) (internal quotation marks omitted).  However, "[t]o succeed on a substitution claim, a defendant must demonstrate good cause for the substitution of assigned counsel." *Burns v. Capra*, No. 22-CV-0381, 2025 WL 624952, at *4 (N.D.N.Y. Feb. 26, 2025) (Suddaby, J.) (internal quotation marks and citation omitted).

#### b. Analysis

Contrary to Petitioner's contention, the trial judge did not deny his request for new counsel.  Rather, at a pretrial conference held on February 24, 2022, an off-the-record bench conference was held regarding Petitioner's potential desire for new counsel, and the trial judge thereafter communicated, on the record, that Petitioner was free to hire new counsel, but his trial date would not be extended based on a change of counsel.  T. at 65-67.  The

23

judge also stated his opinion that Petitioner's trial counsel, Don Kelly, is "an excellent attorney" who had appeared before the court on "a number of cases . . . over the years, including some significant trials." *Id*. at 67.

During this same pretrial conference, the prosecution made a plea offer, Petitioner was afforded time to speak with his attorneys about the offer, and he then stated, on the record, that (1) he was afforded sufficient time to speak with his attorneys about the plea offer, (2) he wished to resolve his case with the offered plea, (3) he did not have any further questions for his attorneys, and (4) he was satisfied with their services.  T. at 67-72.

In addition, as noted, prior to Petitioner's guilty plea, his trial counsel filed a motion to dismiss the indictment and an omnibus motion that included a request for dismissal of the indictment and suppression of statements, and actively represented Petitioner during his suppression hearing.  SR 36-37, 54-57, 462-72; T. at 1-63.  There is no evidence in the record (or argument made by Petitioner) that trial counsel failed to file any meritorious motions, failed to pursue exculpatory evidence, or failed to adequately advise Petitioner on any legal matters.

Furthermore, as noted by the trial court during the pretrial conference in which Petitioner agreed to plead guilty, the offer accepted by Petitioner of ten years determinate plus five years post-release supervision "improved" from a prior offer made by the prosecution, and amounted to less than half of the maximum prison sentence Petitioner could have received if he was found guilty of attempted murder in the second degree.  T. at 68. Simply put, there is nothing in the record to suggest that trial counsel's performance was in

24

any way deficient leading up to Petitioner's guilty plea, or that Petitioner could have realized a more favorable outcome with different counsel.  Thus, even if the *Tollett* bar did not foreclose Petitioner's substitution of trial counsel claim, which it does, Petitioner has failed to demonstrate that good cause existed for the trial court to replace Petitioner's trial counsel before accepting his guilty plea.  In other words, this claim is also plainly meritless.

## V.      CONCLUSION

**WHEREFORE**, it is

**ORDERED** that the petition, Dkt. No. 1, is **DENIED** and **DISMISSED** in its entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[5] and it is further

**ORDERED** that any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated:  May 14, 2026

Mae A. D'Agostino
U.S. District Judge

---

[5]  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).

25